**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ———————————————————— ) | |
| SAKSHI MEHTA ) | |
| 555 Massachusetts Ave. N.W. ) | |
| Washington, D.C 20001 ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| WASHINGTON METROPOLITAN AREA ) | |
| TRANSIT AUTHORITY ) | |
| 600 Fifth Street, NW ) | |
| Washington, DC 20001 ) | |
| Defendant. ) | |
| ———————————————————— ) | |

## COMPLAINT

Plaintiff Sakshi Mehta ("Ms. Mehta" or "Plaintiff"), by and through her attorneys, files this

action and alleges as follows:

## NATURE OF ACTION

1. This is a challenge to Defendant's unlawful discrimination against Plaintiff in violation of

   Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 701, *et seq*. ("Rehab Act").

2. Defendant willfully discriminated against Plaintiff based upon her disability in violation of

   Rehab Act by: (1) subjecting Plaintiff to a hostile working environment due to her disability

   and (2) retaliating against Ms. Mehta for engaging in protected activity by making an internal

   EEO complaint regarding her treatment at the hands of her supervisor.

3. To remedy the Defendant's discriminatory conduct, Plaintiff seeks compensatory damages,

   attorneys' fees and costs, injunctive relief, punitive damages, and other equitable relief this

   Court deems appropriate.

## JURISDICTION AND VENUE

4.  All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

5.  The United States District Court for the District of Columbia has subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

6.  The Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 794a(a), as this matter involves a civil action by an aggrieved person under the Rehab Act.

7.  The Court has subject-matter jurisdiction pursuant to Washington Metropolitan Area Transit Regulation Compact.  D.C. Code § 9-1107.1.

8.  The Court may properly maintain personal jurisdiction over Defendant because the Defendant conducts business in the District of Columbia.

9.  Venue is properly laid in the District of Columbia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the District of Columbia.

## PARTIES

10. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

11. Washington Metropolitan Area Transit Authority ("WMATA" or "Defendant") is a public transportation agency created by compact between the governments of Maryland, the District of Columbia, and the Commonwealth of Virginia.

12. On information and belief, Defendant receives funding from the federal government.

13. WMATA's principal place of business is in Washington, DC.

14. Plaintiff is a Senior Geographic Information Systems Analyst employed by Defendant.

2

15. Plaintiff began her employment with Defendant on October 25, 2010 and continues to be employed by Defendant at present.

16. Plaintiff currently resides in the District of Columbia.

## FACTUAL ALLEGATIONS

17. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

21. Ms. Mehta suffers from Rheumatoid Arthritis.

22. Rheumatoid Arthritis is a disability under the Rehab Act.

23. On October 25, 2010 Ms. Mehta began working of Defendant as a Senior Geographic Information Systems Analyst.

24. Ms. Mehta's direct supervisor upon beginning her employment with Defendant was Mr. Ed Wells.

25. For two years Ms. Mehta worked for Defendant under Mr. Wells without incident.

26. On October 25, 2011 Ms. Mehta received her Annual Performance Review for 2010-2011 performed by Mr. Wells rating her performance as "Exceeds Expectations."

27. On October 25, 2012 Ms. Mehta received her Annual Performance Review for 2011-2012 performed by Mr. Wells in which her performance was again rated as "Exceeds Expectations."

28. In or about late 2012 Ms. Mehta disclosed to Mr. Wells that she suffered from Rheumatoid Arthritis.

29. Subsequent to disclosing her condition to Mr. Wells, Ms. Mehta requested telework pursuant to Defendant's telework policy. Not only did Mr. Wells deny Ms. Mehta's requests but he immediately retaliated against her for requesting telework.

30. On October 24, 2013 Ms. Mehta received her Annual Performance Review for 2012-2013 performed by Mr. Well rating her performance as "Competent," a significant decline from her previous ratings of "Exceeds Expectations."

31. On May 13, 2014, upon being made aware of WMATA's reasonable accommodation policy for the first time, Ms. Mehta applied for a reasonable accommodation for her arthritis in the form of telework one day per week.

32. In or about July 2014 Defendant approved Ms. Mehta's request for reasonable accommodation in the form of telework.

33. Mr. Wells attempted to prevent Ms. Mehta from receiving the reasonable accommodation that she requested by appealing the decision to grant her accommodation request but the initial determination granting Ms. Mehta's telework accommodation was upheld by Tawnya Moore-McGee, Defendant's Chief of Human Resources.

34. In or about August of 2014, Mr. Wells impeded Ms. Mehta's ability to perform her job duties by eliminating the IT system permissions necessary for her to perform her duties. As a result of this action by Mr. Wells, Ms. Mehta began receiving "insufficient privileges" errors as she attempted to perform her duties. These errors impeded Ms. Mehta's ability to perform her duties and caused delays in the completion of her work.

35. Immediately subsequent to the processing of Ms. Mehta's accommodation request, Mr. Wells began engaging in a pattern of heightened surveillance of Ms. Mehta both while in the office and while utilizing her telework accommodation. Mr. Wells began to wait for Ms. Mehta at her desk in the mornings on days when she worked in the office to personally observe her arrival. Mr. Wells also began to question Ms. Mehta's co-workers about her whereabouts, arrival times, and activities, as well as physically follow Ms. Mehta throughout the building

as she performed her daily tasks. On information and belief, Mr. Wells also began tracking Ms. Mehta's daily entry and exit logs from Defendant's identification office and cross-referencing that information with her time sheets.

36. On or about August 26, 2014, shortly before Ms. Mehta's telework accommodation was to be implemented, Mr. Wells directed that Ms. Mehta restrict herself to the elementary steps of the tasks which she had been successfully performing since the beginning of her employment and allow other staff members to perform the higher end responsibilities that she had theretofore been performing.

37. In or about August of 2014, in preparation for the beginning of Ms. Mehta's telework accommodation, Mr. Wells informed Ms. Mehta that during her telework he would require multiple "presence check" emails alerting him to when Ms. Mehta started her work-day, began and ended lunch, and ceased working for the day and a fifteen-minute turnaround time on any emails sent to Ms. Mehta while teleworking.

38. In addition to these requirements Mr. Wells also instituted a requirement that Ms. Mehta provide him on the day before each telework day a list of the work she anticipated completing on her telework day and a follow-up email on the day of or after teleworking listing the work actually completed.

39. On information and belief these requirements placed upon Ms. Mehta by Mr. Wells, which persist at present, are more extensive and onerous than the reporting requirements placed by Mr. Wells on Ms. Mehta's non-disabled co-workers that telework.

40. On August 28, 2014, during Ms. Mehta's first day utilizing her telework accommodation, Mr. Wells subjected Ms. Mehta to multiple forms of surveillance as described above including an attempt to have Ms. Mehta submit to video-conference checks to prove that she

was at home working that Ms. Mehta resisted as being unreasonable. The stress associated

with Mr. Wells treatment of Ms. Mehta caused her to experience a flare in her arthritis

symptoms, lack of sleep, and a migraine.

41. On the same day, August 28, 2014, Ms. Mehta complained to Defendant's HR Department

about the reassignment of her work responsibilities ordered by Mr. Wells as well as Mr.

Well's elimination of tools and resources necessary to complete her work in a timely manner.

Ms. Mehta received no meaningful response from Defendant's HR Department regarding

these expressed concerns.

42. On October 9, 2014 Mr. Wells continued his pattern of harassing Ms. Mehta in association

with her attempts to make use of her telework accommodation by requiring that she begin

providing him a minute by minute breakdown of her workdays listing the amounts of time

spent on various tasks.

43. On information and belief, these types of checks were not routinely required by Defendant

generally and other teleworkers under Mr. Wells' supervision were not subject to this

requirement.

44. Plaintiff went to Defendant's HR department to complain about these onerous and unevenly

applied requirements but no action was taken.

45. On December 5, 2014, after attempting since October 24, 2014 to induce Mr. Wells to

provide one, Ms. Mehta received her Annual Performance Review for 2013-2014 conducted

by Mr. Wells rating her performance as "Solid Performer."

46. Ms. Mehta complained to Mr. Kramer, Defendant's Chief of IT/Apps, about the discrepancy

between her work product and the review provided by Mr. Wells but Mr. Kramer did not

provide any assistance to Ms. Mehta in resolving her concerns regarding Mr. Well's

evaluation of her performance enshrined in her 2013-2014 Annual Performance Review.

47. On January 16, 2015 Mr. Wells wrote a formal memo to Ms. Mehta which was to serve as a

first written warning regarding an alleged deficiency in Ms. Mehta's attendance. This written

warning was issued to Ms. Mehta on the basis of a single incident of tardiness despite the fact

that Ms. Mehta did not have a pattern of tardiness and appropriately made up the time that

she was late. On information and belief, other non-disabled employees under Mr. Wells'

supervision engaged in ongoing patterns of arriving to work late and departing early but went

undisciplined by Mr. Wells.

48. On March 10, 2015 Ms. Mehta filed an internal complaint of discrimination with

Defendant's Office of Equal Employment Opportunity, ("OEEO"), alerting Defendant to

Mr. Wells' discriminatory behavior.

49. On information and belief Ms. Mehta's non-disabled co-workers who had not engaged in

protected activity were not similarly supervised and surveilled by Mr. Wells.

50. In or about April of 2015, Mr. Kramer became aware of Ms. Mehta's internal OEEO

complaint and angrily confronted her stating to her, in relation to her complaint, "you are not

going to win this." Ms. Mehta reported this interaction to Defendant's OEEO investigator

assigned to her complaint but Mr. Kramer's actions were never addressed by Defendant.

51. In or about June of 2015 Mr. Wells denied Ms. Mehta's request to participate in training and

professional development activities. On information and belief, Mr. Wells denied Ms. Mehta

this training despite approving training for three other more junior employees under his

supervision including a contract employee. By denying training to a full-time employee in

favor of providing it to a non-full-time employee, Mr. Wells violated Defendants own policy and practice.

52. On information and belief the employees for whom Mr. Wells approved training were not disabled and had not engaged in protected activity.

53. On August 21, 2015 Ms. Wells behaved in an angry and threatening manner towards Ms. Mehta in the workplace provoking a confrontation within the hearing of Ms. Mehta's co-workers during which he made repeated reference to Ms. Mehta's disability, the fact that she received a reasonable accommodation, and the OEEO complaint filed by Ms. Mehta. During this tirade, Mr. Wells also admitted that he disclosed to his deputy, Minhua Wang, that Ms. Mehta had a medical accommodation.

54. On or about October 8, 2015 Ms. Mehta was unjustly accused by Mr. Wells of disturbing her co-workers.

55. On November 24, 2015, Mr. Wells provided Ms. Mehta with her 2014-2015 Annual Performance Review rating her performance as "Needs Improvement" and placing her on a Performance Improvement Plan. This rating was issued by Mr. Wells despite the fact that on May 29, 2015 Mr. Wells signed a mid-year review of Ms. Mehta's work showing no red flags in her performance. This sentiment was further reflected on October 13, 2015 and November 3, 2015 through on-track project status lists which showed that Ms. Mehta's projects were all on track.

56. On or about December 18, 2015 Ms. Mehta received the OEEO's determination on her complaint that was due to be completed on June 10, 2015.

57. On December 21, 2015 Ms. Mehta attended a meeting with Mr. Wells and Defendant Employee Relations Manager Michelle Chapman to discuss her 2014-2015 Annual

Performance Review but Ms. Mehta's disagreement with the content and rating in the review was not addressed by Defendant.

58. On January 15, 2016 Ms. Mehta signed the 2014-2015 performance evaluation given to her by Mr. Wells stating that a Performance Improvement Plan would be implemented.

## COUNT I: HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY

59. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

60. Defendant subjected Plaintiff to a hostile work environment because of her disability.

61. The hostile work environment interfered with Plaintiff's terms, conditions, and privileges of employment and interfered with Plaintiff's work.

62. Defendant knew or should have known of the hostile work environment and failed to take effective remedial action.

63. To redress Defendant's discriminatory acts under Count I, Plaintiff seeks compensatory damages, emotional distress damages, attorney's fees, court costs, and such other equitable relief as this Court deems appropriate.

64. Plaintiff only seeks damages associated with those hostile and discriminatory acts and omissions committed by Defendant within the limitations period.

## COUNT II: RETALIATION

65. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

66. Ms. Mehta engaged in protected activity in or about March 2015 when she filed an internal complaint of discrimination with Defendant's OEEO.

67. Defendant subjected Plaintiff to a hostile work environment in retaliation for engaging in protected activity.

68. The hostile work environment interfered with Plaintiff's terms, conditions, and privileges of employment and interfered with Plaintiff's work.

69. Defendant knew or should have known of the hostile work environment and failed to take effective remedial action.

70. To redress Defendant's discriminatory acts under Count II, Plaintiff seeks compensatory damages, emotional distress damages, attorney's fees, court costs, and such other equitable relief as this Court deems appropriate.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Ms. Mehta against Defendant;

B. Compensatory and punitive damages;

C. Attorney's fees and costs; and

D. Other such relief as may be appropriate to effectuate the purposes of the Rehabilitation Act.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: March 9, 2016

Respectfully submitted,

_____/s/ Denise M. Clark_____
Denise M. Clark (420480)
Clark Law Group, PLLC
1250 Connecticut Ave, N.W., Suite 200
Washington, D.C. 20036
(202) 293-0015
dmclark@benefitcounsel.com